IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Tyrone J.,**[1]

        Plaintiff,

        v.

**NANCY A. BERRYHILL**,
Acting Commissioner of Social Security,

        Defendant.

_____

**Civ. No. 3:17-cv-01883-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Tyrone J. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are whether the Administrative Law Judge ("ALJ"): (1) erred in finding that Plaintiff's right hip osteoarthritis was "non-severe"; and (2) improperly relied on the vocational expert's ("VE") testimony. Because there is substantial evidence in the record to support the ALJ's findings and errors, if any, were harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on September 25, 2014, alleging disability since August 18, 2014. Tr. 173, 175. Both claims were denied initially and upon reconsideration. Tr. 113, 118, 126, 129. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Rudolph Murgo on July 28, 2016. Tr. 19, 37. ALJ Murgo denied Plaintiff's claim by a written decision dated September 22, 2016. Tr. 16–31. Plaintiff sought review from the Appeals Council and was denied on September 22, 2016, rendering the ALJ's decision final. Tr. 1. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 46 years old at the time of his alleged disability onset and 49 at the time of his hearing. *See* tr. 173. Plaintiff has a GED and worked as a material handler, warehouseman, and forklift driver. Tr. 67, 210. Plaintiff alleges disability due to hip problems, heart problems, and diabetes. Tr. 209.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing

*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## I. Plaintiff's Right Hip Osteoarthritis

Plaintiff argues that the ALJ erred in finding that his right hip osteoarthritis was non-severe. Pl.'s Br. 5, ECF No. 22. Plaintiff argues that it "significantly limits his ability to do basic work activities such as standing and walking" and that the ALJ erred in failing to consider its effect. *Id.* Defendant disagrees but argues that any error at step two would be harmless because the ALJ found in Plaintiff's favor at step two and considered limitations resulting from his right hip impairment at later steps. Def.'s Br. 4–7, ECF No. 23.

At step two, the ALJ must assess whether the claimant's impairment or combination of impairments is severe.[2] *Tackett*, 180 F.3d at 1098; *see* 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.* If so, the ALJ identifies the severe impairment(s) then continues to step three. *Id.* In determining the claimant's RFC at later steps, the ALJ must consider the "total limiting effects" of all of the medically determinable impairments, both "severe" and "non-severe," including the effect of pain. 20 C.F.R. §§ 404.1545(e), 416.945(e); *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Where an ALJ errs in omitting a severe impairment at step two, the error is harmless so long as the ALJ considers *all* of the claimant's functional limitations at subsequent steps (including those caused by the omitted severe impairment). *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ found that Plaintiff had one severe impairment—"degenerative joint disease of left hip, status post hip replacement"—and only moderate osteoarthritis of the right hip. Tr. 24. Substantial evidence exists in the record to support the ALJ's finding that Plaintiff's right hip osteoarthritis was non-severe. Even if the ALJ erred, such error would be harmless because the ALJ found in his favor at step two and considered his right hip impairment in determining his RFC at later steps.

The ALJ acknowledged Plaintiff's hip pain worsened with weight bearing, walking, and inactivity. Tr. 23; *see* tr. 399. The ALJ also noted Plaintiff's statements that his hip pain affected

---

[2] A severe impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling 96-3p, 1996 WL 374181).

his ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs. Tr. 23; *see* tr. 239. The ALJ contrasted these subjective complaints with the following objective medical evidence of record. *See* tr. 23.

Plaintiff received conservative, chiropractic treatment for his hip impairment. *See* tr. 344-93. A conservative course of treatment can undermine debilitating pain allegations where the claimant has no good reason for seeking more aggressive treatment. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). In October 2013, Plaintiff had intact gait and 5/5 strength in his lower extremities. Tr. 400. By July 2014, he had no gross localizing neurologic deficits. Tr. 410. In August 2014, he had good strength in 5/5 muscle groups and his treating physician suggested physical therapy and stretching exercises. Tr. 413. Additionally, Plaintiff had restricted and painful movements in his left hip only and normal sensations in his right leg. *Id.* A January 2015 musculoskeletal examination revealed normal range of motion in his lower extremities without joint tenderness. Tr. 472. A neurological examination revealed normal muscle tone, intact sensation, and present and normal deep tendon reflexes. *Id.* Oxycodone adequately control his pain and he had made "excellent progress." Tr. 475–76. Moreover, his physician noted only left hip pain. Tr. 477.

The ALJ also documented improvement following Plaintiff's January 2015 left hip replacement surgery. Tr. 23. 24 days after his surgery, Plaintiff could drive, had markedly improved pain, and asked about returning to work and the gym. Tr. 442. The ALJ said that Plaintiff's physician told him that he could return to work eventually and should be fine long-term but neglected to note the physician's caveat that he may need to have his right hip replaced. Tr. 23; *see* tr. 442. Nonetheless, Plaintiff only had "some discomfort" and an "intermediate

degree of osteoarthritis" on his right side. Tr. 442. By March 2015, Plaintiff was going to the gym, was advised to do pool exercises, had 5/5 right hip gross strength, and had a good prognosis. Tr. 534–35, 539. In September 2015, his gait was normal and unlimited and he was active—he swam and walked. Tr. 596, 594. By February 2016, Plaintiff continued to do well, performed light labor, and had painless active straight leg raising. Tr. 462. By March 2016, he performed cardio and weight lifting exercises at the gym. Tr. 541. Additionally, he only mentioned left—not right—hip pain and tested negative on his right hip flexion, abduction, and external rotation test. Tr. 541, 550.

Lastly, the ALJ discussed Plaintiff's activities of daily living. For example, he swam, performed cardio and weight lifting exercises at the gym, prepared meals, performed light household chores, rode a bicycle (when his hip did not hurt), and shopped in stores. Tr. 26; *see* tr. 405, 541, 236–38. The ALJ ultimately found that he could perform light work with standing/walking 2 hours based on his left hip replacement and all postural capabilities limited to occasionally (except he could never climb ropes, ladders, or scaffolds). Tr. 29.

Plaintiff fails to explain how his right hip condition limits his ability to do basic work activities beyond the ALJ's findings. *See* Pl.'s Br. 5. Instead, he cites to evidence of his right hip osteoarthritis and subjective complaints of 7 to 9 out of 10 pain. *Id.*; *see* tr. 324, 682, 345, 348, 349, 347, 351, 354, 352, 682. As explained above, the ALJ acknowledged Plaintiff's right hip osteoarthritis and subjective complaints. Even so, the reports that Plaintiff cites say that he only had moderate right hip osteoarthritis. Tr. 324, 682. Regarding Plaintiff's pain, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective medical evidence of record. Tr. 23. Plaintiff does

not dispute this finding. Moreover, the pain complaints that Plaintiff cites to are only from late June to mid July 2014. *See* tr. 345, 348, 349, 347, 351, 354, 352.

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff's right hip osteoarthritis was non-severe. Even if the ALJ erred, such error was harmless.

## II. Vocational Expert's Testimony

Plaintiff next argues that the ALJ improperly relied on the VE's testimony, which diverged from the *Dictionary of Occupational Titles* ("DOT") without explanation. Pl.'s Br. 5–7. "Occupational evidence provided by a VE [] generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). An ALJ may rely on VE occupational evidence that contradicts the DOT, "but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ must ask the VE if the evidence he or she provided is consistent with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007). When there is an apparent conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a disability determination. *Id.* (quoting SSR 00-4p, 2000 WL 1898704, at *2). "A conflict is 'apparent' when it is 'manifest' or 'obvious.'" *Sterba v. Colvin*, 2014 WL 7228989, at *2 (D. Or. Dec. 16, 2014); *see* BLACK'S LAW DICTIONARY 105 (8th ed. 2004).

Here, the ALJ asked the VE whether a person of Plaintiff's age and education can do any light work in the national economy subject to the following limitations: can lift 20 pounds occasionally and 10 pounds frequently, can stand or walk 2 out of 8 hours per day, can sit 6 out of 8 hours per day, has postural limitations, cannot do ropes, ladders, or scaffolds, and can

occasionally balance, stoop, use ramps or stairs, kneel, crouch, and crawl. Tr. 67–68. The VE opined that such an individual could perform three light work jobs: that of a small products assembler, price marker, or storage facility rental clerk. Tr. 68. The ALJ affirmed with the VE that his testimony—other than his answers to questions regarding work absences and off-task time—was consistent with the DOT. Tr. 69.

Plaintiff argues that because he can only be on his feet 2 hours per 8-hour workday, he cannot perform jobs that, "by definition, require him to be on his feet about 6 hours per workday." Pl.'s Br. 7. Plaintiff also argues that he cannot perform the carrying that light work requires—20 pounds occasionally, meaning one-third of an 8-hour workday—because he can only be on his feet one-fourth of an 8-hour workday. *Id.*

Light work requires "a good deal of walking or standing—the primary difference between sedentary and most light jobs" or "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). "Relatively few unskilled light jobs are performed in a seated position." *Id.* Additionally, because "frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the *full range* of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* at *6 (emphasis added).

SSR 83-10 makes clear that some light work jobs involve "sitting most of the time," are "performed in a seated position," and/or require less than the full range of light work regarding carrying. *See* 1983 WL 31251, at *5–6; *see also Roman v. Colvin*, No. ED CV 14-409-SP, 2015 WL 5768375, at *5 (C.D. Cal. Sept. 29, 2015) (finding that light work jobs do not necessarily require a person to stand/walk 6 hours per 8-hour workday or perform the full range of light

work). None of the DOT descriptions of the three jobs at issue here mention standing/walking 6 hours or carrying one-third of an 8-hour workday. *See* DOT § 706.684-022, 1991 WL 679050 (Jan. 1, 2016); DOT § 209.587-034, 1991 WL 671802 (Jan. 1, 2016); DOT § 295.367-026, 1991 WL 672594 (Jan. 1, 2016). To the contrary, they define "light work" as follows:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*Id.* Further, the ALJ asked whether a hypothetical person—who could lift 20 pounds occasionally and 10 pounds frequently and stand/walk for 2 hours per 8-hour workday—could do "*[a]ny* light work," not "*all* light work," in the national economy. Tr. 67–68 (emphasis added). The VE, in his expertise, responded that Plaintiff could perform these three light work jobs and affirmed that his testimony was consistent with the DOT. Tr. 68–69. There is no actual or apparent conflict here. *See Gottschalk v. Colvin*, No. 6:13-cv-00125-JE, 2014 WL 1745000, at *7 (D. Or. May 1, 2014) (finding no actual or apparent conflict between the DOT's description of an occupation requiring "light" exertion and the VE's testimony that an individual who could stand/walk no more than 2 hours per workday could perform the job).

The ALJ properly relied on the VE's testimony.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this <u>4th</u> day of June, 2019.


<u>s/ Michael J. McShane</u>
Michael J. McShane
United States District Judge
